**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**CEDARVIEW MART, LLC**, individually
and on behalf of all others similarly situated,

      Plaintiff,

                                Case No. 3:20-CV-00107-NBB-RP

    v.

**STATE AUTO PROPERTY AND**
**CASUALTY COMPANY,**

      Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF**
**SETTLEMENT CLASS, AND SCHEDULING A FINAL APPROVAL HEARING**

---

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY .........................................3

    A.  Mississippi, Kentucky, Tennessee, Ohio, And Illinois Law Concerning Labor Depreciation ..............................................................3

    B.  The Lawsuit ...........................................................................................5

    C.  Settlement Negotiation...........................................................................6

III.  SUMMARY OF SETTLEMENT TERMS ........................................................8

    A.  The Class................................................................................................8

    B.  Class Members' Recovery Under The Settlement...................................9

    C.  Aggregate Value Of Relief To The Class.............................................10

    D.  Range Of Individual Claim Values.......................................................10

    E.  Exemplars .............................................................................................10

    F.  Disputes And Neutral Evaluator ..........................................................11

    G.  The Release Of Claims .........................................................................12

    H.  Attorneys' Fees, Costs And Service Award .........................................12

    I.  The Class Notice...................................................................................12

IV.  THE SETTLEMENT CLASS IS CERTIFIABLE UNDER FED. R. CIV. P. 23 ...............13

    A.  The Settlement Class Meets The Requirements Of Rule 23(a) ......................15

        1.  Numerosity .................................................................................15

        2.  Commonality ..............................................................................16

        3.  Typicality....................................................................................17

        4.  Adequacy....................................................................................17

    B.  The Settlement Class Meets The Requirements Of Rule 23(b)......................17

1. *Predominance* ...............................................................................................18

2. *Superiority* ..................................................................................................19

V. THE SETTLEMENT MERITS PRELIMINARY APPROVAL .........................................20

   A. The Court Should Grant Preliminary Approval Because The Proposed Settlement Satisfies The Requirements Of Rule 23 And Fifth Circuit Precedent ........................................................................................................20

   B. The Fifth Circuit Factors: The Settlement Achieves An Excellent Result For The Class, Particularly Given The Expense, Duration And Uncertainty Of Continued Litigation ..................................................................................23

      1. *The Adequacy Of Representation*..............................................................23

      2. *The Lack Of Fraud Or Conclusions* .......................................................24

      3. *Complexity, Expense And Likely Duration Of The Litigation* ................24

      4. *The Stage Of The Proceedings*..................................................................25

      5. *Likelihood Of Success On The Merits And The Range Of Possible Recovery*..........26

      6. *The Opinions Of Class Counsel And Class Representatives And The Reaction Of Class Members*....................................................................27

   C. Under Fifth Circuit Authority, It Is Appropriate For The Proposed Class Settlement To Include Claims Not Alleged In The Original Complaint .......................28

   D. Plaintiff's Forthcoming Motion Requesting Attorneys' Fees, Costs, And Service Awards Falls Within The Range Of Reasonableness Sufficient To Allow Preliminary Approval And Notice To The Class................................................31

VI. CONCLUSION...............................................................................................35

## I.    INTRODUCTION

Plaintiff Cedarview Mart, LLC, on behalf of itself and the proposed Settlement Class ("Plaintiff"), respectfully submits this Memorandum in support of its Unopposed[1] Motion for Preliminary Approval of Class Settlement, Certification of Settlement Class, and Scheduling a Final Approval Hearing ("Motion"). The proposed Settlement Agreement with Defendant State Auto Property and Casualty Company ("Defendant") is attached as Exhibit 1 (the "Settlement") to the Motion, filed concurrently herewith.[2]

This multistate class action arises out of Defendant's practice of withholding certain labor costs when making actual cash value ("ACV") payments to its policyholders on structural damage claims. This lawsuit only concerns claims for structural damage (buildings) and not contents (furniture, clothes).

Plaintiff seeks the Court's preliminary approval of this Settlement under Federal Rule of Civil Procedure ("Rule") 23(e)(1) so that notice of the Settlement can be disseminated to the proposed Settlement Class and the Final Approval Hearing scheduled. At the Final Approval Hearing, the Court will have before it additional submissions in support of the Settlement, as well as any objections that may be filed, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

The proposed Settlement here contains five related classes consisting of State Auto's policyholders from the following states: (1) Mississippi; (2) Tennessee; (3) Kentucky; (4) Ohio; and (5) Illinois. For each state, there are two sub-classes. The first includes those Class Members

---

[1] As Paragraphs 1.13 and 15.1 of the Settlement Agreement make clear, however, Defendants deny each and every allegation of liability, wrongdoing and damages, and believes it has substantial factual and legal defenses to all claims and class allegations. *Id.*

[2] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1 to Plaintiff's Unopposed Motion, filed concurrently herewith.

who had Nonmaterial Depreciation withheld from their ACV Payments and who did not subsequently receive the withheld Nonmaterial Depreciation during the applicable Class Period. The second sub-class includes those Class Members who had Nonmaterial Depreciation withheld from their ACV Payments but who did subsequently receive the withheld Nonmaterial Depreciation (through recovery of replacement cost benefits).

As discussed below, the proposed Settlement was reached through arm's-length bargaining and will result in a 105% recovery of the estimated Nonmaterial Depreciation that was withheld from ACV payments for Mississippi, Tennessee, Kentucky and Ohio Class Members who: (1) submit a claim form and still have outstanding labor withheld from their prior ACV claim payments; or (2) would have received an ACV payment but for the withholding of Nonmaterial Depreciation causing the loss to drop below the applicable deductible. In simpler terms, these Class Members will have the right to receive 105% of the labor depreciation this lawsuit sought to recover. For Mississippi, Tennessee, Kentucky and Ohio class members for whom all Nonmaterial Depreciation that was withheld from ACV payments was subsequently paid (*i.e.,* interest only class members), the Settlement will result in a one-time payment (in lieu of individual interest calculations) based on a sliding scale (with claim payments increasing dependent on the amount of Nonmaterial Depreciation withheld).[3] For members of the Illinois Settlement Class, State Auto will pay 80% of the amounts discussed above.

---

[3] State Auto's insurance policies are either "actual cash value only" policies or "replacement cost value" policies. For the latter type of policies, an insurance policyholder who suffers a covered loss first receives an actual cash value payment (calculated by subtracting depreciation from the replacement cost value of the covered loss) and then the policyholder can recover the depreciation (known as "depreciation holdback" or "replacement cost benefits") once the work is performed. The Class Members in the secondary, "interest only" category include those who have recovered the withheld depreciation through making a secondary claim for this replacement cost benefit.

Because the Settlement will result in a significant recovery for the Settlement Class, and for the reasons set forth herein, Plaintiff submits that the Settlement warrants the Court's preliminary approval. Plaintiff therefore respectfully requests that the Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement.

## II.     BACKGROUND AND PROCEDURAL HISTORY

This action and proposed settlement involve allegations that Defendant breached the terms of its standard-form property insurance policies with Plaintiff and other class members by wrongfully depreciating labor costs when adjusting property loss claims in violation of the laws of the states of Mississippi, Tennessee, Kentucky, Ohio, and Illinois.

### A. Mississippi, Kentucky, Tennessee, Ohio, And Illinois Law Concerning Labor Depreciation

In 2018, interpreting Kentucky law, the Sixth Circuit Court of Appeals ruled that State Farm's policy (substantially the same as Defendant's here) did not unambiguously permit the withholding of labor costs as depreciation in calculating ACV. *Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. App'x. 703, 709-11 (6th Cir. 2018) ("A reasonable construction of the insurance policies in this case is that labor is not included in depreciation.").

On April 15, 2019, a unanimous Tennessee Supreme Court held that "labor may not be depreciated when the insurance company calculates the actual cash value of a property using the replacement cost less depreciation method." *Lammert v. Auto-Owners (Mutual) Ins. Co.*, 572 S.W.3d 170, 179 (Tenn. 2019) .

On March 18, 2020, the Sixth Circuit held, on an issue of first impression in Ohio, that "[b]ecause Perry's interpretation of 'depreciation' is a fair reading of an ambiguous term, her interpretation prevails against the insurer. We accordingly hold as a matter of law that it was

improper for Allstate to depreciate labor costs to arrive at its net payment to Perry for the damage to her home." *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 423 (6th Cir. 2020).

On March 30, 2020, interpreting Mississippi law, the Fifth Circuit Court of Appeals ruled that State Farm's policy did not unambiguously permit the withholding of labor costs as depreciation in calculating ACV. *Mitchell v. State Farm Fire & Cas Co.*, 954 F.3d 700, 706-07 (5th Cir. 2020), *reh'g and reh'g en banc denied* (5th Cir. May 13, 2020). In doing so, the Fifth Circuit affirmed Judge Mills' September 24, 2018 orders: (1) denying State Farm's motion to dismiss the plaintiff's breach of contract claim finding the term "actual cash value" is "ambiguous with respect to the withholding of labor depreciation in Mississippi homeowners insurance policies that provide no further definition of ACV;"[4] and (2) granting the plaintiff's motion for class certification. *Id.* at 709, 712.

Finally, on September 23, 2021, a unanimous Illinois Supreme Court concluded that the policyholder's interpretation of the undefined term "actual cash value" was a reasonable interpretation of an ambiguous term and "depreciation may not be applied to the intangible labor component." *Sproull v. State Farm Fire & Cas. Co.*, 2021 IL 12646, *54.

Significantly, at the time the parties here reached agreement in principle as to the Settlement, in August 2021, the Illinois Supreme Court's decision in *Sproull* had not yet been rendered and its outcome was unknown.

---

[4] This Court's decisions in *Huey v. Allstate Vehicle and Property Ins. Co.*, and *Titan Exteriors, Inc. v. Certain Underwriters at Lloyd's, London*, are in accord with the Fifth Circuit's ambiguity determination in *Mitchell*. *Huey*, No. 19-00153, 2020 WL 5370950, at *3 (N.D. Miss. Sept. 8, 2020) (this Court holding that undefined term 'actual cash value' is ambiguous and thus the ambiguity must be resolved in favor of the insured); *Titan Exteriors,* 297 F. Supp. 3d 628, 634 (N.D. Miss. 2018) (same).

**B. The Lawsuit**

On April 2, 2020, Plaintiff Cedarview Mart, LLC filed this putative class action alleging that Defendant improperly deducted Nonmaterial Depreciation from actual cash value payments when adjusting claims for structural losses under insurance policies (the "Complaint"). Dkt. 1. Plaintiff alleged individual and class claims, on behalf of Defendant's insureds with Structural Loss claims in Mississippi, Tennessee, Kentucky, and Ohio[5] for breach of contract and declaratory judgment. *See generally id.*

On June 8, 2020, Defendant moved to dismiss the Complaint, and separately moved to strike all non-Mississippi class allegations on the same date. Dkt.10, 14. Plaintiff filed its response to these motions on July 9, 2020. Dkt. 26. On March 30, 2021, the Court denied Defendant's motions to dismiss and to strike all non-Mississippi class allegations and lifted the stay of proceedings. Dkt. 40. On April 13, 2021, Defendant filed its Answer and affirmative defenses to the Complaint (Dkt. 43), and shortly thereafter, the Court entered its Case Management Order and set the matter for trial on August 1, 2022. Dkt. 46. The parties then commenced discovery and Plaintiff engaged in an extended period of informal and formal discovery processes to gain information needed to pursue a motion to certify the putative class. McWherter Decl. ¶ 15.[6] During the discovery process, Defendant produced extensive electronic claims data regarding potential putative class members in Mississippi, Tennessee, Kentucky, Ohio, and Illinois. *Id.* ¶ 16. As discovery proceeded, the parties agreed to begin settlement discussions in earnest, and on

---

[5] As part of the Settlement, the Parties agreed to add Illinois policyholders to the settlement as well.

[6] The McWherter Declaration, filed concurrently with this Memorandum is attached as Exhibit 2 to the Motion, addresses the history of settlement negotiations for this lawsuit and the timing and structure of the settlement negotiations. McWherter Decl., ¶¶ 12-27. The Declaration also addresses the considerations that led to the compromise in exchange for the proposed release. *Id.* at ¶¶ 35-41; *see also generally* Peterson Decl. and Snodgrass Decl. (attached as Exs. 3 and 4 to the Motion).

November 9, 2021, the parties filed a Joint Motion to Stay in Anticipation of Presentation of Class Settlement, which was granted on November 12, 2021. Dkt. 50-51.

### C. Settlement Negotiations

In August 2021, the Parties reached an agreement in principle as to all material aspects of the relief to be provided to the proposed class via a proposed class action settlement, including an agreement on the scope of the putative class, the measure of indemnification to the putative class, and other material terms. McWherter Decl. ¶¶ 17, 22. This agreement in principle followed lengthy and multi-session negotiations between the Parties, obtaining data from a third-party vendor (Xactware®), internal analysis of voluminous multi-state claims and payment data produced by State Auto for the putative class, and retention of a consulting expert witness by Plaintiff. *Id.* at 22.

As part of the relief to be afforded to the Class Members, the Parties' negotiations resulted in relief being granted to insureds in multiple states, including Illinois, Kentucky, Mississippi, Ohio, and Tennessee. McWherter Decl. ¶ 18. The Parties' agreement also contemplated the addition of other State Auto entities being added to the proposed settlement. *Id.* ¶¶ 18, 23-24. In the end, all State Auto entities writing property policies in Illinois, Kentucky, Mississippi, Ohio, and Tennessee during the Class Period will participate in and abide by the terms of the Settlement Agreement, including State Auto Property and Casualty Insurance Company, State Automobile Mutual Insurance Company, State Auto Insurance Company of Ohio, Milbank Insurance Company, and Meridian Security Insurance Company. *Id.*

After reaching agreement on the relief to be afforded to the Class Members, the Parties then began negotiating attorneys' fees, ultimately culminating in a 6+ hour settlement conference in January 2022. *Id.* ¶¶ 22, 25-26. On or around January 11, 2022, and after conducting damages

modeling of the aggregate values to be made available to the putative class, the parties reached an agreement on attorneys' fees and litigation expenses. *Id.* at ¶ 25. Thereafter, in February 2022, the parties reached agreement on a class representative service award and terms for settlement of Plaintiff's individual claim unrelated to labor depreciation. *Id.* Significantly, none of these payments will reduce the value of the class members' recoveries. *Id.*

Class Counsel have significant experience with labor depreciation class actions, having represented insureds in numerous putative and certified class actions pending throughout the United States. Based on this and other class action experience, Class Counsel believe the claims and allegations relating to labor depreciation asserted in the Action have significant merit. Class Counsel also recognized and acknowledged, however, that prosecuting such claims through further fact and expert discovery, class certification motions, trial, and appeals would involve considerable uncertainty, time, and expense. McWherter Decl. ¶¶ 35-41.

Class Counsel have therefore concluded that it is in the best interests of the Settlement Class that the claims asserted by Plaintiff against Defendant in the Action be resolved on the terms and conditions set forth in the Settlement Agreement. *Id.* ¶¶ 40-41. After extensive consideration and analysis of the factual and legal issues presented in the Action, and extensive and multiple settlement negotiation sessions, Class Counsel have reached the conclusion that the substantial benefits that Class Members will receive as a result of this Settlement are a very good result in light of the risks and uncertainties of continued litigation, the time and expense that would be necessary to prosecute the Action through class certification, trial and any appeals that might be taken, and the likelihood of success at trial. *Id.*

## III.   SUMMARY OF SETTLEMENT TERMS

### A.  The Class

The "Settlement Class" is comprised as follows:

"Mississippi Settlement Class" means all policyholders, (except for those explicitly excluded below), under any property insurance policy issued by State Auto, who made:  (i) a Structural Loss claim for property located in the State of Mississippi between April 2, 2017 through February 16, 2021; and (ii) that resulted in an ACV Payment from which Nonmaterial Depreciation was withheld, or that would have resulted in an ACV Payment, but for the withholding of Nonmaterial Depreciation causing the loss to drop below the applicable deductible.

"Illinois, Kentucky, Ohio, and Tennessee Settlement Class" means all policyholders, (except for those explicitly excluded below), under:  (A) any property insurance policy with a one-year suit limitation issued by State Auto, who made:  (i) a Structural Loss claim for property located in the States of Illinois, Kentucky, Ohio, or Tennessee between April 2, 2019 through February 16, 2021; and (ii) that resulted in an ACV Payment from which Nonmaterial Depreciation was withheld, or that would have resulted in an ACV Payment, but for the withholding of Nonmaterial Depreciation causing the loss to drop below the applicable deductible; or (B) any property insurance policy with a two-year suit limitation issued by State Auto, who made:  (i) a Structural Loss claim for property located in the States of Illinois, Kentucky, Ohio, or Tennessee between April 2, 2018 through February 16, 2021; and (ii) that resulted in an ACV Payment from which Nonmaterial Depreciation was withheld, or that would have resulted in an ACV Payment, but for the withholding of Nonmaterial Depreciation causing the loss to drop below the applicable deductible.

The Settlement Class does not include:  (i) policyholders whose claims arose under policy forms, endorsements, or riders expressly permitting the Nonmaterial Depreciation within the text of the policy form, endorsement or rider, i.e., by express use of the words "depreciation" and "labor;" (ii) policyholders who received one or more ACV Payments for a claim that exhausted the applicable limits of insurance; (iii) policyholders whose claims were denied or abandoned without an ACV Payment; (iv) policyholders where no Xactimate estimate was generated by State Auto; (v) State Auto and its officers and directors; (vi) members of the judiciary and their staff to whom this Action is assigned and their immediate families; and (vii) Class Counsel and their immediate families.

Settlement ¶¶ 2.30- 2.31.

The "Class Periods" vary for each state class based upon the differences in the minimum suit limitations periods in the five states. Specifically, "Class Periods" means:

- For the Mississippi Settlement Class:  April 2, 2017 through February 16, 2021;

- For members of the Illinois, Kentucky, Ohio, and Tennessee Settlement Class with a one-year suit limitations clause: April 2, 2019 through February 16, 2021;

- For members of the Illinois, Kentucky, Ohio, and Tennessee Settlement Class with a two-year suit limitations clause:  April 2, 2018 through February 16, 2021

Settlement ¶ 2.11.

### B.  Class Members' Recovery Under The Settlement

The proposed Settlement provides that the applicable State Auto entity shall pay the following amounts to the following categories of Class Members:

1. **Mississippi, Kentucky, Ohio and Tennessee Settlement Class Members With Still Withheld Nonmaterial Depreciation**: Subject to the terms, limits, conditions, coverage limits, and deductibles of policies, members of the Mississippi Settlement Class, Kentucky Settlement Class, Ohio Settlement Class and Tennessee Settlement Class from whom Nonmaterial Depreciation was withheld and not subsequently recovered, and who submit a timely filed Claim Form, will receive a payment equal to 105% of the net estimated Nonmaterial Depreciation that was withheld from ACV Payments and not subsequently paid, or that would have resulted in an ACV Payment, but for the withholding of Nonmaterial Depreciation causing the loss to drop below the applicable deductible. Settlement ¶¶ 4.1.1.

2. **Kentucky, Mississippi, Ohio and Tennessee Settlement Class Members Without Still Withheld Nonmaterial Depreciation**: Mississippi, Kentucky, Ohio and Tennessee Class Members for whom all Nonmaterial Depreciation that was withheld from ACV Payments was subsequently paid (*i.e.*, through receipt of replacement cost benefits) will receive a one-time payment calculated according to the below schedule:

| Amount of nonmaterial released depreciation: | Settlement Payment: |
|---|---|
| $1 - $5,000 | $25 |
| $5,001 - $10,000 | $50 |

| | |
|---|---|
| $10,001 - $20,000 | $100 |
| $20,001 - $40,000 | $200 |
| $40,001 - $60,000 | $300 |
| $60,001 - $80,000 | $400 |
| Greater than $80,000 | $500 |

Settlement ¶ 4.1.2

3. **Illinois Settlement Class Members**: For members of the Illinois Settlement Class, State Auto will pay 80% of the amounts set forth above.

Settlement ¶ 4.1.3. Attorneys' fees, costs, and a service award as may be approved by the Court will not reduce Class Members' individual payments. Settlement ¶¶ 4.1.4-4.1.5, 13.1, 13.5.

C.    **Aggregate Value Of Relief To The Class**

Based upon analysis of proprietary depreciation data from Xactanalysis® reports for State Auto property claims in the states at issue, Class Counsel estimate that the aggregate amount to be made available to Class Members for payment on a claims made basis is at least $3,764,000, exclusive of "interest only" payments to Class Members, attorneys' fees, litigation expenses, administration costs, and the class representative service award. McWherter Decl. ¶ 31.

D.    **Range Of Individual Claim Values**

The payments made available to Class Members will vary. Based on modeling using multi-state claims data spreadsheets produced by State Auto, the average potential claim recovery for claims with "still withheld" amounts of Non-Material Depreciation is believed to be approximately $1,784.00. McWherter Decl. ¶ 31. In contrast, an "interest only" Class Member in Illinois that had a small amount of Nonmaterial Depreciation withheld in the first instance would receive only $20.00. *Id.*

E.    **Exemplars**

Plaintiff provides the following examples of potential claim payouts for hypothetical Class Members:

**Example 1**:  A Mississippi class member (homeowner) had a roof claim and received an ACV payment during the Class Period in the amount of $24,378.00, from which $6,400.08 in Nonmaterial Depreciation was withheld.  If this class member submits a claim consistent wit the requirements of the Settlement Agreement, she should receive $6,720.08 (105% of $6,400.08).

**Example 2**: A Mississippi class member (homeowner) had a fire loss in January 2019 and received an ACV payment in the amount of $100,000.00, from which $21,000.00 in Nonmaterial Depreciation was withheld.  This class member completed all repair work and later received a replacement cost benefit payment through which she recovered all $21,000.00 of the initially withheld Nonmaterial Depreciation (after submitted an additional replacement cost benefit claim). If this class member submits a claim consistent with the requirements of the Settlement Agreement, she should receive $200.00 (per "interest only" payment chart above).

### F.  Disputes And Neutral Evaluator

Any Class Member may dispute the amount of the Claim Settlement Payment or denial of their claim by requesting in writing a final and binding neutral resolution by the Neutral Evaluator. Settlement ¶¶ 7.10-7.12. The parties have agreed that Robert Gibbs of Gibbs Travis PLLC and/or Anne Veazy of Mississippi Mediation & Arbitration will serve as the Neutral Evaluator. *Id.* ¶ 2.20. All disputes received from Class Members will be provided to Defendant's Counsel and Class Counsel, and State Auto will then have thirty (30) days to evaluate the claim or supply any additional documentation to the Administrator. *Id.* ¶ 7.11.  From there, the Neutral Evaluator shall issue a decision based only on the written submissions of State Auto and Class Counsel, and the decision of the Neutral Evaluator shall be final and binding. *Id.* ¶ 7.12.

### G. The Release Of Claims

In return for these payments and other class relief, Plaintiff and the Class will provide State Auto a release narrowly tailored to the subject matter of this dispute—*i.e.*, the systemic practice of withholding of non-material depreciation from ACV payments utilizing claim estimating software. Settlement ¶¶ 9.1. All unrelated disputes concerning an individual claim will not be impacted by the class Settlement. *See id.*

### H. Attorneys' Fees, Costs And Service Award

Class Counsel will seek as attorneys' fees, costs and litigation expenses, and Defendant agrees to pay if the Court approves, an amount no greater than $1,129,722. Class Members' recoveries will not be reduced or enhanced by the amounts of attorneys' fees, costs or litigation expenses paid. Settlement ¶¶ 13.1-13.2.

Additionally, Defendant has agrees to pay Plaintiff a service award not to exceed $7,500.00. The service award will not reduce the Class Members' recoveries. Settlement ¶ 13.5.

### I. The Class Notice

Defendant will separately pay for the mailing of the Class Notice, Claim Forms, and Postcard Notice, and the Administrator. Settlement ¶¶ 4.1.6. All Class Members will be given direct-mailed notice of the terms of the proposed Settlement at least seventy-five days prior to the Final Approval Hearing. *Id.* ¶¶ 5.3-5.4. Prior to mailing of the Class Notice by the Administrator through the United States Postal Service, the Administrator will run all Class Members' names and addresses through the "National Change of Address" ("NCOALink") database in order to obtain updated addresses. *Id.* ¶¶ 5.3, 5.5. The Class Notice will also be available on the Settlement Website. Settlement ¶ 5.8. Additionally, a reminder postcard notice will be issued thirty days prior to the expiration of the Claim Deadline. *Id.* ¶ 5.6.

## IV.     THE SETTLEMENT CLASS IS CERTIFIABLE UNDER FED. R. CIV. P. 23.

The proposed Settlement comes prior to formal class certification and seeks to certify a class simultaneous with a settlement, commonly referred to as a "settlement class." As such, this Court must first ensure that the proposed class certification meets the requirements of Rule 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* William Rubenstein, NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.) (Dec. 2021 Update) (hereafter "NEWBERG"); Wright and Miller, 7B FEDERAL PRAC. AND PROC. § 1797.2 (3d ed.) (Dec. 2021 Update) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

While the Supreme Court reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), the requisite "rigorous analysis" of the record and consideration of the merits must be focused on and limited to the question of whether Rule 23's requirements have been established and, here, in the context of a proposed settlement class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited, and district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits. *Id.* at 851-52; *accord Simms v. Jones*, 296 F.R.D. 485, 496 (N.D. Tex. 2013) ("'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage' and merits questions may be considered only to the extent that they are 'relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" (quoting *Amgem Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)).

13

Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met for the proposed *settlement* class. This is because courts routinely certify labor depreciation *litigation* classes, including in Mississippi and Kentucky: "Courts in jurisdictions where labor depreciation has been found to be unlawful have *uniformly found that common issues predominate* in cases challenging insurers' depreciation of labor costs." *Hicks v. State Farm Fire and Cas. Co.*, No. 14-00053, 2019 WL 846044 (E.D. Ky. Feb. 21, 2019) (emphasis added), *aff'd* 965 F.3d 452 (6th Cir. July 2020) (affirming certification of Kentucky labor depreciation litigation class); *see, e.g., Mitchell*, 954 F.3d 700 (affirming certification of Mississippi labor depreciation litigation class).[7]

Furthermore, federal courts have recently certified several Mississippi, Tennessee and Ohio labor depreciation *settlement* classes in the process of granting final approval of labor depreciation class settlements. Most recently, on February 5, 2021, the Middle District of Tennessee granted final class certification of labor depreciation settlement classes involving Mississippi, Tennessee and Ohio policyholders and final approval of settlement in two separate but related cases captioned, *Holmes v. LM Ins. Corp.*, No. 19-00466 and *Northside Church of Christ v. Ohio Security Ins. Co.*, No. 20-00184 (M.D. Tenn. Feb. 5, 2020) (*Holmes* Dkt. 84; hereinafter "*Holmes* Order"). Similarly, on September 21, 2020, the Western District of Tennessee granted final class certification of Mississippi and Tennessee labor depreciation settlement classes

---

[7] *See also Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018*), reh'g and reh'g en banc denied* (8th Cir. Jan. 29, 2019); *Arnold v. State Farm Fire & Cas. Co.*, No. 17-00148, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020); *Green v. Am. Modern Home Ins. Co.*, No. 4:14-04074 (W.D. Ark. Aug. 24, 2016); *McCain v. Baldwin Mut. Ins. Co*., No. 2010-901266 (Montgomery Cty., Ala., Oct. 18, 2016), *rev'd due to inadequacy of representative*, 260 So.3d 801 (Ala. 2018); *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179 (Ark. 2010); *McLaughlin v. Fire Ins. Exchange*, No. 1316-CV11140 (Jackson Cty., Mo. July 12, 2017).

and final approval of settlement in the case captioned *Koester v. USAA Gen. Indem. Co.*, No. 19-02283 (W.D. Tenn. Sept. 4, 2020) (*Koester* Dkt. 69).[8]

### A. The Settlement Class Meets The Requirements Of Rule 23(a).

Plaintiff believes the following factors warrant certification of the proposed Settlement Class.

#### 1. Numerosity

Where there are likely more than 40 class members, numerosity is presumptively satisfied. NEWBERG § 3:12. When analyzing numerosity, a district court uses its common sense. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). Only a "reasonable estimate" is required to establish numerosity. *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 561 (N.D. Miss. 2018) (citation omitted), *aff'd by* 954 F.3d 700 (5th Cir. 2020). Based upon data review and extrapolation, counsel for the parties estimate that class notice will issue to potential Class Members associated with approximately 22,000 claims. Numerosity is easily satisfied.

---

[8] Several labor depreciation settlement classes have also been approved in other jurisdictions. *E.g.*, Final Order and Judgment, *Schulte v. Liberty Ins. Corp.*, No. 3:19-cv-00026 (S.D. Ohio May 20, 2021); *Arakoni v. Memberselect Ins. Co.*, No. 1:20-cv-000092 (N.D. Ohio March 3, 2021); *Stuart v. State Farm Fire & Cas. Co.*, No. 4:14-cv-4001 (W.D. Ark. June 2, 2020); *Oglesby v. Erie Ins. Co.*, No. 19-02361 (W.D. Tenn. Aug. 4, 2020) (*Oglesby* Dkt. 39); *Wade v. Foremost Ins. Co.*, No. 18-02120-JPM (W.D. Tenn. July 6, 2020) *Wade* Dkt. 106); *Halford v. Mid-Century Ins. Co.*, No. 19-01077-JPM (W.D. Tenn. July 6, 2020) (*Halford* Dkt. 64); *Baker v. Farmers Group, Inc.*, et. al, No. CV--17-03901-PHX-JJT, DE 70 (D. Ariz. Sept. 25, 2019); *Braden, et al. v. Foremost Ins. Co. Grand Rapids*, No. 4:15-cv-04114-SOH, DE 119 (W.D. Ark. Oct. 9, 2018); *Larey v. Allstate Prop. & Cas. Ins. Co.*, No. 4:14-cv-04008-SOH, DE 79 (W.D. Ark. Feb. 9, 2018); *Brown v. Homesite Group Inc. d/b/a Homesite Home Ins.*, No. 4:14-cv-04026-SOH, DE 58 (W.D. Ark. April 7, 2017); *Goodner v. Shelter Mut. Ins. Co.*, Case No. 4:14-cv-04013-SOH, DE 73 (W.D. Ark. June 6, 2017); *Green v. American Modern Home Ins. Co., et. al*, Case No. 4:14-cv-04074-SOH, DE 94 (W.D. Ark. June 1, 2017); *Adams v. Cameron Mut. Ins. Co.*, No. 2:12-cv-02173-PKH, DE 52 (W.D. Ark. Aug. 27, 2015). To Plaintiff's counsel's knowledge, no labor depreciation *settlement* class has ever failed to be certified.

2. *Commonality*

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he commonality requirement is not usually a contentious one … and is easily met in most cases." NEWBERG §13:18. To demonstrate commonality, plaintiffs' "claims must depend upon a common contention…that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359.

The seminal disputed issue in this case is the same one this Court previously addressed in *Huey* and *Titan Exteriors*, and addressed by the Fifth Circuit and Judge Mills in *Mitchell*, the Sixth Circuit in *Hicks* and *Perry*, the Tennessee Supreme Court in *Lammert*, and the Illinois Supreme Court in *Sproull*, under slightly different property policies—*i.e.,* whether the policy at issue unambiguously permits labor depreciation in the calculation of ACV. *Huey*, 2020 WL 5370950, at *3. This same issue has repeatedly been identified by federal courts as a common question well suited to class wide resolution. *Mitchell*, 327 F.R.D. at 561 ("The proposed class members, all of whom purchased insurance coverage from State Farm, each have a claim concerning the issue of whether State Farm breached its policy by depreciating labor costs in calculating actual cash value payments…. [C]ommonality is met."); *accord Hicks*, 965 F.3d at 459 ("Plaintiffs' claims share a common legal question central to the validity of each of the putative class member's claims: whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their ACV payments."). In addition to labor withholdings, class members' entitlement to statutory prejudgment interest also presents a common issue. Commonality is easily satisfied.

16

### 3. Typicality

Like the test for commonality, "the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mitchell*, 327 F.R.D. at 561 (internal citation omitted); NEWBERG § 3:29. Here, all claims are premised upon the same legal theories. Plaintiff's breach of contract claim arising from the underpayment of its ACV claims in violation of the standard-form policies is identical to the claims of the putative class. *Mitchell*, 327 F.R.D. at 561-62; *see also Hicks*, 2019 WL 846044, at *4. The additional claim for prejudgment interest is likewise identical for both the putative class and proposed class representative. Through these claims, Plaintiff seeks monetary relief for itself and all putative class members. Accordingly, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

### 4. Adequacy

Adequacy under Rule 23(a)(4) is satisfied where a proposed class representative: (1) does not have conflicts with other members of the class, and (2) has retained qualified counsel. *Mitchell*, 327 F.R.D. at 562. Here, Plaintiff's interests are perfectly aligned with the proposed class, as it seeks to maximize everyone's recovery of compensatory damages and prejudgment interest. *Id.*; *Arnold*, 2020 WL 6879271, at *7; *Hicks*, 2019 WL 846044, at *5. Plaintiff retained counsel experienced in class actions and insurance law. McWherter Decl., ¶¶ 2-11; Peterson Decl. ¶¶ 2-4; Snodgrass Decl. ¶¶ 2-8.

## B. The Settlement Class Meets The Requirements Of Rule 23(b).

To qualify for certification under Rule 23(b)(3), a settlement class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any

questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Again, however, in a settlement class situation, the Court does not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

### 1. *Predominance*

The determinative legal issue, whether labor may be depreciated under State Auto's policies, remains the predominating issue for purposes of this Court's preliminary certification analysis. *Hicks*, 965 F.3d at 457-59 (affirming certification of labor depreciation class action *after* earlier Sixth Circuit panel resolved predominating common liability question in plaintiffs' favor). It is black-letter law that conceded or otherwise resolved legal issues still satisfy Rule 23(b)(3)'s predominance inquiry such that a class action remains the superior means of adjudicating the case. *Hicks*, 965 F.3d at 457-58 (rejecting insurer's argument that commonality cannot be satisfied where the common liability question concerning labor depreciation was already answered in plaintiffs' favor); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ("Even resolved questions continue to implicate the 'common nucleus of operative facts and issues' with which the predominance inquiry is concerned."); NEWBERG § 4:51. Simply put, "resolved issues bear on the key question that the analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *In re Nassau*, 461 F.3d at 228.

Accordingly, the Fifth Circuit, Judge Mills and other federal courts have repeatedly found that common issues predominate in cases challenging insurers' withholding of labor costs as depreciation under the terms of standard-form insurance policies. *Mitchell*, 954 F.3d at 711-12

(district court did not abuse its discretion in finding predominance where overarching issue was whether insurer breached its contracts by depreciating labor costs); *Stuart,* 910 F.3d at 375-78 ("It was not an abuse of discretion for the district court to conclude that plaintiffs' [labor depreciation] claims share a common, predominating question of law" that is "well suited to classwide resolution"); *Hicks*, 2019 WL 846044, at 5-6 ("Courts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs.").

2. *Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Mitchell*, 327 F.R.D. at 563-64.

"[T]he Fifth Circuit has held that the 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.'" *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 412 (N.D. Miss. 2000) (citations omitted). "A negative value suit is one in which the 'stakes to each member are too slight to repay the cost of the suit." *Id.* (internal quotation and citation omitted).

All three superiority factors favor preliminary certification as this Court does not consider manageability. First, this case presents classic small, negative value claims, and class members have no interest in individual litigating this issue. As such, "the negative value nature of the claims

in this case establishes superiority of the class action." *Mitchell*, 327 F.R.D. at 564; *see also Arnold*, 2020 WL 6879271, at *10; *Hicks*, 2019 WL 846044, at *6 (finding superiority where spreadsheet data of supplemental labor depreciation payments made by State Farm as part of its Kentucky labor depreciation refund program demonstrated majority of policyholders were paid less than $1,000, with a significant portion paid less than the filing fee for commencing an action in state court). Further, the parties have uncovered no evidence that any class member has brought a separate claim against State Auto for withheld labor depreciation at issue. Finally, it would be desirable to concentrate these claims in this Court, as it will streamline the resolution of the claims and conserve judicial and litigation resources.

Accordingly, all the requirements of Rule 23 are satisfied. The next step is for the Court to analyze whether the proposed settlement warrants preliminary approval.

## V. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.

### A. The Court Should Grant Preliminary Approval Because The Proposed Settlement Satisfies The Requirements Of Rule 23 And Fifth Circuit Precedent.

Rule 23(e) was recently amended to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified. In the context of preliminary approval, the amendments direct putative class counsel to provide the court with information sufficient to determine that the settlement is fair, reasonable and adequate; that certification for purposes of settlement is warranted; and that notice is justified because the court will likely grant final approval to the settlement. These amendments largely mirror current practice under applicable law. As discussed below, courts in the Fifth Circuit have applied similar principles as part of the analysis of preliminary approval motions for many years. All such factors weigh in favor of preliminary approval here.

According to the amendments to Rule 23, before notice can issue, the putative class representative must demonstrate "that the Court will likely be able to" approve the settlement under Rule 23(e)(2); and (ii) "certify the class for purposes of judgment" arising from the settlement. Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a Court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). These factors overlap with the factors that courts in the Fifth Circuit have considered on preliminary and final approval, which include:

(1)    the likelihood of success on the merits weighed against the amount and form of relief in the settlement;

(2)    the complexity, expense and likely duration of the litigation;

(3)    the opinions of class counsel and class representatives;

(4)    the amount of discovery engaged in by the parties;

(5)    the reaction of absent class members;

(6)    the risk of fraud or collusion; and

(7)    the public interest.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); Final Order and Judgment at ¶ 24, *Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170-MPM-RP (N.D. Miss. Feb. 25, 2021) (*Mitchell* Dkt. 249) (granting final approval of class action settlement) (hereinafter "*Mitchell* Final Approval

Order"); *McWilliams v. Advanced Recovery Sys., Inc.*, No. 15-70, 2016 WL 6208633, at *4 (S.D. Miss. Oct. 20, 2016) (granting preliminary approval of class action settlement).

When considering these factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair. 'Particularly in class action suits, there is an overriding public interest in favor of settlement.'" *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (internal citations omitted); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) ("settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving … lawsuits"); *Roberts v. First Fin. Planners, Inc.*, No. 05-38-D-D, 2006 WL 8444265, at *1 (N.D. Miss. June 27, 2006) ("The Fifth Circuit has held that '[p]articularly in class action suits, there is an overriding public interest in favor of settlement." (citations omitted)).

At the preliminary approval stage, the Court is not required to determine whether it will ultimately approve the settlement, but only whether "the proposed settlement will likely earn final approval." *See* Adv. Comm. Note at 27; Order Granting Preliminary Approval of Class Settlement at 1-2, *Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170-MPM-RP (N.D. Miss. Sept. 10, 2020) (*Mitchell* Dkt. 234; hereinafter "*Mitchell* Prelim. Approval Order"); *Kemp v. Tower Loan of Miss., LLC*, No. 15-499, 2017 WL 3426240, at *4 (S.D. Miss. Aug. 8, 2017) ("At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the range of reasonableness or possible approval." (citation omitted)). As this Court's sister district has explained:

> This preliminary fairness evaluation "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."
>
> If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval.

*Jones v. Singing River Health Sys.*, No. 14-447, 2016 WL 6106518, at *5 (S.D. Miss. Jan. 20, 2016) (internal citations omitted); *In re Pool Prods. Market Antitrust Litig.*, 310 F.R.D. 300, 315 (E.D. La. 2015) ("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval." (citations omitted)).

As set forth in detail below, consideration of the Rule 23(e) factors and the Fifth Circuit factors support preliminary approval here. *See generally Mitchell* Prelim. Approval Order (preliminarily approving settlement after considering the Rule 23 requirements and Fifth Circuit factors).

### B. The Fifth Circuit Factors: The Settlement Achieves An Excellent Result For The Class, Particularly Given The Expense, Duration And Uncertainty Of Continued Litigation.

#### 1. The Adequacy Of Representation

The adequacy requirement requires inquiry into "the zeal and competence of the representative's counsel and … the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Coput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001).

Class Counsel are putative or certified class counsel in a majority of the pending labor depreciation class actions throughout the United States and have decades of experience in insurance, class actions and complex litigation. Both Plaintiff and its counsel have diligently and zealously represented the certified class. In the face of considerable legal complexities, Class Counsel has coordinated discovery efforts and successfully defeated Defendant's motions to dismiss Plaintiff's breach of contract and declaratory relief claims. Class Counsel additionally

succeeded in securing a Settlement with this formidable opponent. The "adequacy of representation" factor is thus satisfied. *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 485.

### 2. The Lack Of Fraud Or Conclusion

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations conducted by experienced, knowledgeable counsel." *Kemp*, 2017 WL 3426240, at *4 (citations omitted). Likewise, courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary. *Owens v. Southern Hens, Inc.*, No. 07-28, 2009 WL 10722485, at *3 (S.D. Miss. July 27, 2009).

The presumption in favor of settlement is warranted here as there is no indicia of fraud or collusion. Settlement negotiations only occurred after the parties engaged in significant informal discovery. *See, supra,* Section II.B. The negotiations themselves were conducted at arm's-length and structured to follow the highest ethical standards—*e.g.,* class relief was negotiated and agreed upon before any negotiations concerning attorneys' fees, costs and service award occurred.[9] *See* McWherter Decl. ¶¶ 22, 25-27.

### 3. Complexity, Expense And Likely Duration Of The Litigation

This factor requires courts to compare the immediate benefits and risks of the proposed settlement against the mere possibility of future relief given the uncertainties of protracted and expensive litigation. *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 487; *Jenkins*, 300

---

[9] *See, e.g., Claudet v. Cytec Ret. Plan*, No. 17-10027, 2020 WL 3128611, at *13 (E.D. La. June 12, 2020) ("because attorney fees were negotiated separately and funded independently from the Settlement, Class Members' recoveries will not be diminished by the award of attorney fees in this case. Accordingly, this factor weighs in favor of approval"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 989 (E.D. Tex. 2000) ("In keeping with the procedure recommended in the MANUAL FOR COMPLEX LITIGATION, attorneys' fees were negotiated apart from the package of relief for the class and after negotiations over the merits concluded."); *see also* NEWBERG § 13:2 ("Fees should not be negotiated between class counsel and defendant's counsel until after a settlement of the class's claims has been agreed upon.").

F.R.D. at 303. "In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Jenkins*, 300 F.R.D. at 303 (internal citation omitted).

"It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Labor depreciation class actions are particularly complex and slow moving due to the increased likelihood of interlocutory appeals via state supreme court "question certification" laws, 28 U.S.C. 1292(b) and/or Federal Rule of Civil Procedure 23(f). For example, the *Hicks* litigation, *supra*, Argument Section IV, was filed on February 28, 2014, and remains pending in the Eastern District of Kentucky, just shy of its eighth-year anniversary. During the summer of 2020, the Sixth Circuit resolved the insurer's *second* interlocutory appeal in *Hicks*. *See generally Hicks*, 965 F.3d 452.

The instant lawsuit thus could have continued for several additional years in trial and appellate courts absent settlement. Experts in the areas of claims handling and data manipulation would have been disclosed as experts. Both sides retained experienced class action attorneys. Given the foregoing, and because the settlement provides significant monetary relief for class members now, as opposed to potential relief in the future, the Court should find that this factor supports preliminary approval of the settlement. *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 487; *Jenkins*, 300 F.R.D. at 303.

### 4. *The Stage Of The Proceedings*

The Court's consideration of the stage of the proceedings and the nature and extent of discovery in evaluating the fairness of a settlement is focused on "whether the parties have obtained sufficient information to evaluate the merits of the competing positions." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 487 (citation omitted). The parties engaged in significant informal discovery, including detailed analysis of thousands of line items of claim and

payment data, plus complex damages modeling concerning the aggregate values to be made available to putative class. *See, supra,* Section II.B. Plaintiff's Counsel were therefore well-positioned to intelligently assess the merits of the lawsuit.

### 5. Likelihood Of Success On The Merits And The Range Of Possible Recovery

The "likelihood of success" factor requires the Court to compare the relief offered by the proposed Settlement with the likely recovery if the case were to proceed to trial. Absent fraud or collusion, the probability of success on the merits has been hailed as the most important *Reed* factor." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 488. When considering the possible range of recovery, given the plaintiff's likelihood of success on the merits, the Court must remain aware that "[c]ompromise is the essence of settlement" and "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.* at 489 (internal quotation marks and citations omitted).

On March 30, 2020, the Fifth Circuit affirmed the grant of class certification in *Mitchell*, a similar labor depreciation class action in this District. *See generally Mitchell,* 954 F.3d at 712. Three months later, the Sixth Circuit likewise affirmed certification of a similar labor depreciation class action in the Eastern District of Kentucky. *See generally Hicks,* 965 F.3d at 467. While labor depreciation litigation classes have been initially certified for contractual claims (*see, supra*, Arg. § IV), nationwide, no labor depreciation class action has ever gone to trial or faced the issue of decertification.

Assuming *arguendo* that class certification could have been obtained and sustained over any Rule 23(f) appeals or decertification motions, the next hurdle would be to establish class-wide liability and class-wide damages. Labor depreciation class actions pending throughout the United States have resulted in decidedly mixed results concerning liability, with the majority resulting in

26

no recovery. *See Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. Appx. 703, 710 (6th Cir. 2018) (the "substantial weight of authority" is against successfully establishing liability in labor depreciation class action).

Nevertheless, after the Fifth Circuit's decision in *Mitchell*, this Court's denial of Defendant's motion to dismiss and strike, and the additional appellate decisions in *Hicks* (Kentucky), *Perry* (Ohio), and *Lammert* (Tennessee), Class Counsel had a high level of confidence in establishing contractual liability and damages. *See* McWherter Decl. ¶ 37.[10] The potentially available recovery by eligible Mississippi, Kentucky, Ohio, and Tennessee Class Members of 105% of the Nonmaterial Depreciation withheld from their ACV payments, and eligible Illinois Class Members' potential recovery of 84% of the Nonmaterial Depreciation withheld from their ACV payments, reflect the strong value of these claims. *See, e.g., Jenkins*, 300 F.R.D. at 305 (approving settlement that provided approximately 46.5% of the most probable aggregate damages that class counsel believed plaintiffs and settlement class could recover at trial, recognizing "courts regularly find settlements to be fair where '[p]laintiffs have not received the optimal relief'" given the uncertainty and risks involved in continued litigation).

> 6. *The Opinions Of Class Counsel And Class Representatives And The Reaction Of Class Members*

"'The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight' when 'evaluating a proposed settlement.'" *Jenkins*, 300 F.R.D. at 305 (citation omitted); *see, e.g., Cotton*, 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the

---

[10] At the time the settlement terms were agreed to, the outcome of the merits question of whether labor depreciation is lawful in the first instance was unclear in Illinois. While the law was clear in Mississippi, Tennessee, Kentucky, and Ohio, the issue was then pending before the Illinois Supreme Court. *See Sproull v. State Farm Fire & Cas. Co.*, 2021 IL 12646 (decided September 23, 2022). It was because of this risk that Plaintiff negotiated class relief for Illinois putative class members at 84% net recovery (as opposed to 105% net recovery for Mississippi, Tennessee, Kentucky, and Ohio class members). McWherter Decl. ¶ 38.

judgment of experienced counsel for the parties."); *Batchelder*, 246 F. Supp. 2d at 530 (same). District courts within the circuit have thus recognized that "[c]lass counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 489 (citation omitted). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *Hill v. Hill Bros. Constr. Co., Inc.*, No. 14-213, 2018 WL 280536, at *3 (N.D. Miss. Jan. 3, 2018) (same).

Here, at the preliminary approval stage, all parties agree that the settlement is fair, adequate, and reasonable.[11] Class Counsel, who are putative or certified class counsel in a high percentage of the pending labor depreciation class actions throughout the United States and have decades of experience in insurance, class actions and complex litigation, strongly recommend the settlement. Plaintiff, knowing that the proposed Settlement will result in a 105% recovery of still-withheld labor depreciation for eligible Mississippi, Kentucky, Ohio, and Tennessee Class Members, and 84% for eligible Illinois Class Members, plus a one-time interest payment for those Settlement Class Members who have already received previously withheld Nonmaterial Depreciation, likewise strongly recommends the settlement.

### C. Under Fifth Circuit Authority, It Is Appropriate For The Proposed Class Settlement To Include Claims Not Alleged In The Original Complaint.

In settlement negotiations, Defendant understandably requested that the resolution of this case include the participation and release of affiliated entities that engaged in the same practices challenged in this case. Specifically, the original complaint was asserted against Defendant State Auto Property and Casualty Company. However, the proposed Settlement Agreement includes:

---

[11] The reaction of absent class members cannot be determined prior to the dissemination of notice.

Defendant State Auto Property and Casualty Insurance Company, State Automobile Mutual Insurance Company, State Auto Insurance Company of Ohio, Milbank Insurance Company, and Meridian Security Insurance Company.

Black letter law supports and allows the inclusion of non-parties to a putative class settlement:

> In determining the validity of a settlement agreement's release of *non-parties*, courts have generally employed the same analysis they apply to the release of *claims*: agreements releasing non-parties will be approved so long as "the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled."
>
> …
>
> In sum, the courts' approach to the release of parties mirrors their approach to the release of claims: as explained in the succeeding section of the Treatise, courts will approve releases of claims that were not in the case's complaint, including claims over which the court lacks jurisdiction, so long as they arise out of the same factual predicate as the class's main claims. So too, as this section discussed, will courts approve the release of non-parties, even those beyond their jurisdiction, so long as there exists some factual relationship between the release and the class's claims.

NEWBERG § 18:20 (emphasis in original; internal citations omitted). Allowing non-parties to participate in a class settlement has the obvious impact of promoting resolution of lawsuits while precluding serial litigation against corporate affiliates. *Id.* ("A defendant may be unlikely to settle a class action if class members can later pursue unasserted claims, or claims against non-parties, that may have the effect of re-opening the litigation.").

For example, in *Jones v. Singing River Health Servs. Foundation*, an ERISA class action, the Fifth Circuit held that the district court did not abuse its discretion by approving the release of non-party, Jackson County, as part of the parties' proposed class action settlement. 865 F.3d 285, 302-03 (5th Cir. 2017). The Fifth Circuit explained:

> Although it must carefully consider the consequences, a court may approve a class action settlement that releases non-parties if "the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted

against the parties to the action being settled." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 109 (2d Cir. 2005) ....[13]

> [13] "[T]he rationale behind approving releases of non-parties turns on the courts' interest in the settlement of disputes. A defendant may be unlikely to settle a class action if class members can later pursue unasserted claims, or claims against non-parties, that may have the effect of re-opening the litigation." Newberg § 18:20.

*Id.* The Fifth Circuit concluded that because the non-party County agreed to contribute to the proposed class relief (indeed, in substantial sums) in exchange for a release of liability, the objectors to the proposed settlement did not demonstrate that this release was inadequate. *Id.*

The Second Circuit reached a similar conclusion in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d at 108 (relying upon *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) to hold release of merchants' claims against credit card companies and their member banks was valid even though member banks were non-parties). The Second Circuit held:

> Even though the *Reyn's* claims may be released with respect to Visa and MasterCard, Pasta Bella objects to the release of the member banks, since they were not parties to this action. However, "**class action settlements have in the past released claims against non-parties where, as here, the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled.**" .... The district court did not, therefore, err by finding that the non-party banks could be released from liability for conduct premised on the identical factual predicate of claims alleged in this action.
>
> **The [non-party] banks' settlement contributions further support the district court's conclusion**. The banks "not only contributed to the Settlement[ ], but virtually all of the relief comes from them." ... They agreed to lower temporarily their interchange rates, notify merchants of the cessation of the tying arrangement, and reconfigure their debit cards. *Id.* Moreover, the banks' membership fees may contribute to the compensatory relief paid by Visa and MasterCard. *Id.* **We cannot find that the district court abused its discretion by releasing nonparties, particularly where, as here, those nonparties are members of the defendants and have contributed to the settlement. Indeed, it is hard to imagine that defendants would have settled without also releasing their member banks from liability; to do so would have invited relitigation of the same factual allegations against the banks**.

*Id.* at 108-09 (italicized emphasis in original; bold emphasis added; internal citations omitted).

This same reasoning supports preliminary approval of the parties' proposed settlement here. Each of the settling State Auto insurance entities—whether formally named in the Complaint or not—are contributing to the class relief in exchange for a release from liability for conduct premised on the identical factual predicate of claims alleged in this action. Under these circumstances preliminary approval is warranted. *Jones*, 865 F.3d at 302-03.

### D. Plaintiff's Forthcoming Motion Requesting Attorneys' Fees, Costs, And Service Award Falls Within The Range Of Reasonableness Sufficient To Allow Preliminary Approval And Notice To The Class.

Class Counsel will seek as attorneys' fees, costs and litigation expenses, and State Auto has agreed to pay if the Court approves, an amount no greater than $1,129,722. Class Members' recoveries will not be reduced or enhanced by the amount of attorneys' fees, costs or litigation expenses paid. Plaintiff will also seek a service award in the amount of $7,500, which if approved, will not reduce the Class Members' recoveries.

Under the Settlement Agreement, and pursuant to Rule 23(e) and (h), Class Members will receive notice that fees, costs and litigation expenses will be sought, and will be provided information about how they can object, assuming the Court preliminarily approves the Settlement. Class Counsel will then file a motion for fees and expenses pursuant to both the Settlement and Rules 23(h)(1) and 54(d)(2). In turn, this Court will then award the attorneys' fees, costs and service award that it determines appropriate assuming the Settlement is finally approved.

Given Class Counsel's considerable efforts and success in achieving this recovery for class members, there is no reason to doubt the reasonableness of the anticipated request for attorneys' fees and expenses, or the fairness of the Settlement. *See Jones*, 2016 WL 6106518, at *6 (holding "the attorneys' fees and expenses appear, at this preliminary stage, to be reasonable due to the

number of attorneys involved in the case and the complexity of the case. As a result, the Court finds that the proposed settlement should be preliminarily approved …."). Although fees are analyzed at the final approval stage, proposed class counsel seek amounts made available on a "claims made available" basis pursuant to the percentage-of-the-fund method.

In this District, and elsewhere in the Fifth Circuit, "[a] percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases." *Batchelder*, 246 F. Supp. 2d at 531; *Hill*, 2018 WL 280537, at *2; *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 499-501 (N.D. Miss. 1996) (collecting cases within Fifth Circuit employing percentage method and detailing "numerous" problems with the lodestar approach noted by other courts). "The Fifth Circuit has [] noted 'that the percentage method is more predictable, encourages settlement, and reduces incentives to protract litigation[.]'" *Cook v. Howard Indus., Inc.*, No. 11CV41, 2013 WL 943664, at *3 (S.D. Miss. Mar. 11, 2013) (quoting *Union Asset Mgmt.*, 669 F.3d at 644).

"This court has substantial discretion in determining the appropriate fee percentage. However, awards commonly fall between a lower end of 20% and an upper end of 50%." *Hill*, 2018 WL 280537, at *2; *In re Catfish Antitrust Litig.*, 939 F. Supp. at 503; *Batchelder*, 246 F. Supp. 2d at 533 ("courts typically set the benchmark for attorneys' fees between 25% and 33% of the settlement amount.").[12] Class Counsel will demonstrate when submitting their anticipated motion concerning fees and litigation expenses (assuming district court preliminary approval) that the request will fall at the low end of these benchmarks. *Hill*, 2018 WL 280537, at *2-3 (approving

---

[12] "Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available to class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration." *Bethea v. Sprint Comm. Co. L.P.*, No. 12-322, 2013 WL 228094, at *3 (S.D. Miss. Jan. 18, 2013).

fee award of 33% of common fund); *Jenkins*, 300 F.R.D. at 307 (awarding 33% of $4,000,000 fund as attorneys' fees); *In re Shell Oil Refinery*, 155 F.R.D. 552, 575 (E.D. La. 1993) (awarding 1/3 in fees from $170,000,000 fund).

Further, because the attorneys' fees will not reduce any class member's recovery and the attorneys' fees are to be paid "*over and above* the settlement costs and benefits with no reduction of class benefits," agreements between plaintiffs' and defense counsel as to the amount to fees "are *encouraged*, particularly where the attorneys' fees are negotiated separately and only after all the terms have been agreed to between the parties." *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, *28-30 (M.D. Tenn. Aug. 11, 1999) (emphasis added); *Bethea v. Sprint Comm. Co. L.P.*, No. 12-322, 2013 WL 228094, at *2 (S.D. Miss. Jan. 18, 2013) ("Courts, including the Fifth Circuit, have encouraged litigants to resolve fee issues by agreement, if possible."); *Bailey v. AK Steel Corp.*, No. 1:06-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) ("courts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in *addition to and separate from* the defendant's settlement with the class" (emphasis added)). Indeed, courts within this Circuit have held that these "over and above" fee requests are entitled to a "presumption of reasonableness." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-33 (W.D. Tex. 2007); *see also Cole v. Collier*, No. 14-1698, 2018 WL 2766028, at *13 (S.D. Tex. June 8, 2018) ("When the amount of fees is agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable.").

Here, pursuant to the parties' agreement, Defendant has agreed to pay, subject to Court approval, an amount no greater than $1,129,722 in attorney's fees and litigation expenses. Plaintiff's counsel estimates the aggregate value of the relief made available to the class for

payment on a claims made basis is at least $3,764,000, plus costs of administration (estimated to be between $100,000 and $200,000) and attorneys' fees and expenses ($1,129,722), for a total aggregate value of $5,043,722. Thus, the attorneys' fees to be sought are approximately 22% of the aggregate value. *See* McWherter Decl. ¶¶ 34; *Bethea v. Spring Comm. Co., L.P.,* No. 12-322, 2013 WL 228094, *3 (S.D. Miss. Jan. 18, 2013) (awarding attorney' fees based on gross settlement fund inclusive of cash benefits to be made available to (but not necessarily claimed by) class members, settlement administrative costs to be borne by defendants, and the agreed upon attorneys' fees and expenses also to be paid separately by defendants); *Buford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *1 (W.D. La. Nov. 8, 2012) (recognizing "class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed").

Finally, service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Jenkins*, 300 F.R.D. at 305. "Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *Id.* at 306 (collecting cases); *see, e.g., In re Catfish Antitrust Litig.*, 939 F. Supp. at 504 (approving incentive awards of $10,000 to each of the four named plaintiffs); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving incentive awards of $25,000 to each of two named plaintiffs). The $7,500 service award sought here is consistent with those approved in other labor depreciation class actions in Mississippi and elsewhere. *See Mitchell* Final Approval Order ¶ 40 (awarding $15,000 service award to class representative in Mississippi labor depreciation class action); *see also Holmes* Order at ¶ 15 (approving $7,500 service awards to each of 7 class representatives in multistate labor depreciation class action); *Wade* Order at ¶ 22 (approving $15,000 service award in labor

depreciation class action); *Halford* Order at ¶ 23 (approving $7,500 service award in labor depreciation class action); *see also Stuart* Order at 14, ¶ 13 (awarding each class representative in labor depreciation class action a service award of $9,500).

Further, the proposed representative, Cedarview Mart, LLC, obtained a settlement with an aggregate value estimated to be at least $5,043,722. Its willingness to serve as a class representative was critical to the litigation. Because this Court will fully analyze the appropriateness and amount of the service award at the final approval hearing, the proposed service award in the Settlement Agreement does not provide grounds for delaying the grant of preliminary approval.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court preliminarily approve the Settlement. In order to comply with notice requirements under CAFA, as well as to allow sufficient time after notice for class members to decide whether to opt out of the classes or to object to the settlement, Plaintiff further requests that the Court schedule a final fairness hearing no sooner than 120 days from the date of preliminary approval.

Dated: March 4, 2022

Respectfully submitted,

MCWHERTER SCOTT BOBBITT, PLC

*/s/J. Brandon McWherter*
J. Brandon McWherter (MS Bar #105244)
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
Tel: (615) 354-1144
Fax: (731) 664-1540
brandon@msb.law

Erik D. Peterson
ERIK PETERSON LAW OFFICES, PSC
249 E. Main St., Suite 150
Lexington, KY 40507
Tel: (800) 614-1957
erik@eplo.law

T. Joseph Snodgrass
SNODGRASS LAW LLC
Fifth Street Towers
100 South Fifth Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
jsnodgrass@snodgrass-law.com

*Attorneys for Plaintiff and Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the Court's Case Management Electronic Case Files (CM/ECF) system, which served a copy to all counsel of record.

*/s/J. Brandon McWherter*

36